UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| MICHAEL DWAYNE THOMPSON | * | CIVIL ACTION NO. 08-1511 |
|---|---|---|
| VERSUS | * | JUDGE STAGG |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent herewith.

## Background & Procedural History

On September 2, 2004, Michael Dwayne Thompson filed the instant applications for disability insurance benefits and supplemental security income payments. (Tr. 89-91, 242-243). He alleged disability since May 1, 2004, due to two back surgeries (enlarged disc causing pain with spinal cord). (Tr. 89, 72). The claims were denied at the initial stage of the administrative process. (Tr. 71, 73-76, 244-248). Thereafter, Thompson requested and received a July 27, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 279-306). However, in a November 26, 2006, written decision, the ALJ determined that Thompson was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 54-65).

Thompson appealed the adverse decision to the Appeals Council. On August 11, 2008, the Appeals Council denied Thompson's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).[1]

On October 10, 2008, Thompson sought review before this court. He alleges the following errors:

(1) the Appeals Council erred when it failed to specifically address the additional evidence and arguments submitted in conjunction with his request for review; and

(2) the new evidence undermines the ALJ's residual functional capacity assessment.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340,

---

[1] The Appeals Council originally denied review on April 25, 2008. (Tr. 42-44). However, the Council set aside their previous denial to consider additional information. (Tr. 5).

343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

3

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **Analysis**

The ALJ found at Step Two of the sequential evaluation process that Thompson suffers from severe impairments of "2 status post L4 and L5 diskectomy and depression." (Tr. 59).[2] However, he concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 59-60).

The ALJ next determined that Thompson retained the residual functional capacity for sedentary work, with the ability to occasionally balance, stoop, and crouch, but never crawl,

---

[2] Thompson eventually underwent three back surgeries. (*See e.g.*, Tr. 286).

4

kneel, or climb stairs or ladders. (*See*, Tr. 60).³ He is also moderately limited in his ability to sustain concentration, work with others, and interact with the public. *Id*.

Plaintiff contends that the Appeals Council erred when it failed to address additional evidence first submitted by plaintiff to the review board. The evidence consists of a March 27, 2007, Social Security Disability Functional Capacity Evaluation Summary ("FCE") conducted and prepared by Steve Allison, P.T.,⁴ and a facsimile from Thomas Staats, Ph.D., wherein he translated some of the terms that he used in his April 25, 2005, mental consultative examination into terms more commonly employed by the Commissioner.⁵

The foregoing evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).⁶ There is little question that the additional

---

³ Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

⁴ Generally, the FCE indicated that Thompson retained the exertional capacity to perform "Restricted-Light" work, with the need to "stand/walk" for fifteen minutes per hour. (*See*, Tr. 13-38).

⁵ Staats clarified that his use of the terms, "adequate/fair," "marginal," "marginal-to-poor," "poor," and "impaired," were equivalent to none, mild, moderate, marked to extreme, and extreme limitations of functioning, respectively. (*See*, Tr. 11, 165-169).

⁶ *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

evidence meets the applicable criteria. The FCE is certainly new; the record contains no other medical assessment of plaintiff's ability to perform work-related activities. *See*, discussion, *infra*. The FCE is also material, because it includes a limitation recognizing plaintiff's need to periodically "stand/walk" which further erodes the sedentary occupational base. *See*, SSRs 83-12, 96-9p. Moreover, although the FCE was conducted approximately four months after the ALJ's decision, there is no indication that plaintiff's condition deteriorated during this interval. In fact, the FCE included some exertional capacities that exceeded the ALJ's findings. (*See e.g.*, Tr. 16).

Dr. Staats' facsimile is also new because it for the first time equates terms that he employed in his mental capacity evaluation report with terms commonly used by the Commissioner, and which were used in this case by the non-examining agency psychologist, Mark Dulle, Ph.D. (Tr. 181-184). The facsimile is material because once Dr. Staats' April 25, 2005, report is read together with his subsequent translation, it is manifest that Dr. Dulle's assessment is inconsistent with Dr. Staats' findings.[7] Moreover, the ALJ purportedly relied upon Dr. Dulle's assessment in his residual functional capacity assessment,[8] which he cannot do if the non-examining physician's assessment contradicts the findings of the examining physician. *See, Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added). Finally, the facsimile is related to the period at issue because it explains the findings of the evaluation administered by Staats during the relevant period.

Thus, the new evidence submitted by plaintiff to the Appeals Council is properly before

---

[7] Dr. Dulle indicated that Thompson suffered no more than a moderate limitation in his ability to interact with others. (*See*, Tr. 182). In contrast, Dr. Staats opined that Thompson's social interaction skills and adaptation were "poor," i.e., markedly limited. (Tr. 167, 11).

[8] Tr. 61-62; *see* discussion, *infra*.

6

the court, and it serves to undermine the ALJ's residual functional capacity assessment. Even without consideration of the new evidence, however, the record does not contain substantial evidence to support the ALJ's assessment. For example, neither the claimant nor any physician has indicated that Thompson is capable of working at the sedentary level.[9] Instead, the ALJ appears to have autonomously derived plaintiff's residual functional capacity. (*See*, Tr. 63). However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See, Ripley v. Chater* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpubl.) (in the

---

[9] On June 10, 2004, B. Scott Harrington, M.D., examined Thompson and recommended light duty work. (Tr. 140-141). However, this examination occurred only one month after the alleged onset of disability, and preceded further deterioration of plaintiff's condition. On November 6, 2004, Thompson was seen by Cheynita Woodson-Jones, M.D., for a consultative examination at the request of Disability Determination Services. (Tr. 158-164). However, her examination failed to address Thompson's residual work capacity, and preceded his subsequent surgery. *Id*.

Plaintiff's treating surgeon, Marco Ramos, M.D., also did not contemplate any specific work-related limitations due to Thompson's impairments. (*See e.g.*, Tr. 199-217). Rather, he simply concluded in April 2006, that Thompson was unable to work. (Tr. 199). Although a physician's statement that a claimant is disabled or unable to work is accorded no special significance under the regulations, 20 C.F.R. § 404.1527(e)(1), it does reflect the physician's belief that the claimant suffers from an impairment that, at a minimum, significantly impacts his ability to work.

Plaintiff's own testimony also does not support a residual functional capacity for sedentary work. (*See*, Tr. 294) (can sit for up to 30 minutes before needing to lie down). In fact, the closest support for the ALJ's physical residual functional capacity assessment is the March 2007 FCE that was not even before the ALJ. However, the FCE included the additional limitation that plaintiff needs to periodically interrupt his sitting to stand/walk – a limitation which was not included in the ALJ's hypothetical to the vocational expert (separate and apart from other more restrictive limitations ultimately not credited by the ALJ). (*See*, Tr. 302). Thus, even with the FCE, the ALJ's Step Five decision is not supported by substantial evidence.

7

absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

The undersigned further observes that the ALJ's residual functional capacity assessment of plaintiff's mental impairment is not supported by substantial evidence. In his decision, the ALJ appeared to rely upon Dr. Dulle's assessment,[10] but then omitted, without discussion, several limitations of functioning recognized by Dulle.[11]

Accordingly, because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity which is not supported by substantial evidence, the undersigned necessarily finds that the ALJ's ultimate conclusion that plaintiff is not disabled, is likewise not supported by substantial evidence.

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.[12]

---

[10] (Tr. 61-62).

[11] Dulle indicated that Thompson suffered moderate limitations in his ability to: 1) maintain attention and concentration for extended periods; 2) perform activities within a schedule, maintain regular attendance, and be punctual; 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 4) to get along with coworkers or peers without distracting them or exhibiting behavior extremes. (Tr. 181-183). In contrast, the ALJ recognized moderate limitations in sustaining concentration, working with others, and interacting with the public. (Tr. 60).

[12] Plaintiff urges the court to reverse with instructions to award benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of June, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

1985); *see also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains uncertain.